GEORGE C. HAZELET ET AL. V. HOLT COUNTY.

FILED JUNE 3, 1897. No. 8977.

1. **Pleading.** The word "made," as used in a pleading, *held* to be equivalent to and to express the same meaning as "executed."

2. **Official Bonds: BREACH: PLEADING.** An official bond was copied in full in a petition immediately following an allegation of its execution and delivery. *Held,* To be a sufficient pleading of the covenants and promises of the obligors to the bond. The petition further held to sufficiently state certain breaches of the promises of the bond.

3. **County Clerk: FEE BOOK: FEES: EXCESS.** It is a duty in respect to which the statute is mandatory, that a county clerk shall keep a fee book and shall enter therein every item of fees received or earned by him in the manner and with the particular information in regard to it prescribed by statute; also to make a correct report, as required by law, of the same to the county board, and to pay, without demand, any excess received over and above the amount stated and which may be allowed by law, into the county treasury.

4. ———: **FEES: EXCESS: ADJUSTMENT: FRAUD: RES JUDICATA.** A county board, in its examination of reports of a county clerk, of fees received by him, and in the adjustment of the account between him and the county, acts ministerially; and if, through fraud or mistake, he is allowed to retain fees which he should not, such adjustment is no defense or bar to an action by the county to recover such fees.

5. ———: ———: ———: **INTEREST.** Interest may be recovered on such a claim and against the sureties in the bond, without a demand being made for payment of the principal, as it should have been paid into the county treasury without demand.

ERROR from the district court of Holt county. Tried below before KINKAID, J. *Affirmed.*

*J. C. Crawford* and *H. M. Uttley*, for plaintiffs in error.

*H. E. Murphy, W. R. Butler*, and *M. F. Harrington,* contra.

HARRISON, J.

At the general election held in Holt county in 1889 George C. Hazelet was elected county clerk of said county,

and subsequently there was executed and delivered by him as principal and the other plaintiffs in error as sureties a bond conditioned for his faithful performance of the duties of the office, which bond was approved. Hazelet, on the day of January, 1890, designated by law, assumed the duties of the office, and continued in the performance thereof until the close. of the term, January 6, 1892. The present action was commenced by the county of Holt to recover certain sums alleged to have accrued in its favor by reason of breaches of the covenants or conditions of said bond. The county obtained a judgment in the trial in the district court, and Hazelet and his bondsmen have prosecuted error proceedings to this court.

The first point presented in the argument is that there is no sufficient statement of a cause of action in the petition; hence the judgment based thereon is not sustained and must be set aside. In this connection we are directed to the following portion of an allegation of the petition, viz.: "On the 23d day of December, 1889, the defendant George C. Hazelet, as principal, and the defendants Joseph S. Bartley, Milton Doolittle, Arthur C. Crossman, Howard Miller, C. N. Forney, Jacob Smith, Seth Woods, Arthur L. Morse, J. H. Colburn, Clarence H. Walrath, John Forrest, Charles L. Sturdevant, W. H. Hendrix, C. A. Jarvis, J. C. Purnell, and H. L. Putnam, as sureties, made and delivered to plaintiff an obligation in writing." It is claimed that it is not pleaded therein that the bond was executed by plaintiffs in error, that the word "made" has no such significance as to warrant its use in expressing the fact of the execution of the bond, and that it did not express it; therefore, the execution of the instrument was not stated, and the petition was defective for the lack of such statement. The use of the word "made" to set forth the execution of the bond is in exact compliance with the wording of a form for petition in an action on official bonds given in Maxwell, Pleading & Practice, page 202, form No. 123,—from which the form of the petition

in the case at bar was probably obtained, the pleader
having apparently closely followed the plan and arrange-
ment of such form.    It is said in Black's Law Dictionary
that "execute" means "To make; as to execute a deed,
which includes signing, sealing, and delivery."   "Make:
To execute with the requisite formalities; as to make a
bill, note, will, deed, etc."   (Webster's International Dic-
tionary; *Brown v. Westerfield*, 47 Neb., 399.)   The criti-
cism is one to which the petition is not open.   It must
therefore be overruled.

A copy of the bond was given in the body of the peti-
tion, and evidently relied on by the pleader as a statement
of certain of the facts necessary to show a cause of action.
This, it is argued, was insufficient.    It is also urged that
breaches of the conditions of the bond were not pleaded.
The petition did contain a statement that the principal
therein had been elected to the office, for the faithful per-
formance of the duties of which the bond in question was
conditioned; also that the principal and sureties executed
and delivered the bond.    The instrument, as copied in the
petition, was to be construed as a part of it, and the con-
ditions as therein contained were sufficient allegations
of the covenants and obligations of the parties principal
and sureties.    In the opinion in the case of *Clement v.
Hughes*, 17 S. W. Rep. [Ky.], 285, an action on a guardian's
bond, there is the following statement: "In this instance
the petition avers that the guardian executed bond with
the appellants as his sureties, and then the bond is copied
as a part of the petition *in hæc verba*.   This was sufficient.
Where the writing is copied, the covenant of the party, of
course, appears, and it supplies the otherwise necessary
averment as to what the obligor covenanted to do."   "It
is sufficient to set forth the very words of an instrument;
and if it be so pleaded the court will judge of their legal
effect."   (*Elliott v. Roche*, 67 N. W. Rep. [Minn.], 539;
*Grimes v. Cullison*, 41 Pac. Rep. [Ore.], 355;  *Budd v. Kra-
mer*, 14 Kan., 101;  Maxwell, Pleading & Practice, 89;
1 Chitty, Pleading, 306;  *Pefley v. Johnson*, 30 Neb., 529.)

There were allegations in the petition of the non-performance by Hazelet of acts which the conditions of the bond and the law required him as county clerk to do.  These were sufficient to show breaches of the conditions of the bond.  We conclude that the petition, liberally construed, as the Code requires, was not defective in the particulars designated and argued in the brief for plaintiffs in error.

The allegations of the petition as to which the jury awarded the county a recovery were that Hazelet had received for making road books and assessors' books, during the year 1890, $100 for preparing each set of books, and like sums for the performance of similar duties during the year 1891; that during the year 1890 he had received a fee of $2 for each of 179 certificates of incumbrances on property furnished to the sheriff in actions of foreclosure, preparatory to appraisements and sales, and in 1891 he had received $2 for each of 312 of such certificates; that he had not entered either of the sums received for making road and assessors' books on his fee book as fees earned and collected, and of the amounts collected for the certificates of incumbrances he had entered in the fee book but twenty-five cents of the sum collected for preparing and furnishing each one.  By section 42 of chapter 28 of the Compiled Statutes it is prescribed that every county clerk whose fees shall exceed $1,500 per annum shall pay the excess into the county treasury.  In section 43 of the same chapter it is made obligatory on certain officers, including county clerks, to make quarterly reports under oath to the county board, showing the different items of fees received, from whom, at what time, and for what service, the amount received since the last prior report, and the whole sum received for the current year; and section 44 of the chapter requires each of the officers referred to in the act to keep a fee book, in which must be entered each and every item of fees collected, showing in separate columns the name of the party from whom received, the amount received, the time, and for what service the fee was charged.  "There is no room

for doubt, under the sections above referred to, that it is the duty of each county clerk to keep a fee book, and to enter therein every item of fees received or earned by him for official services, and to make an accurate report of the same to the county board. The statute in that respect is mandatory. It does not exempt any officer governed by its provisions from reporting all the legal fees by him collected, and the courts are powerless to relieve him from performing that duty." (*State v. Hazelet*, 41 Neb., 257.) The case from the opinion in which we have just quoted was one in which an application was made for a writ of *mandamus* to compel the respondent, who is a plaintiff in error in the case at bar, to enter in his fee book fees collected by him as county clerk of Holt county for preparing and furnishing to the sheriff certificates of incumbrances in appraisals of lands to be sold under executions and orders of sale, and it was determined in that case that the clerk must enter such fees in the book as provided in the statute, and generally that the county clerk must enter in the fee book all his fees. It is clear that it was the duty of the officer to enter the amounts in question in his fee book, except, as we shall hereinafter see, the item for preparing road books. In regard to the amounts received for the certificates of liens, it is not contended that this was done, but as to the sums for the assessors' and road books, which were amounts retained by the county clerk of the fees collected for other services as such officer, it is asserted that the duty of entering them in the fee book was performed. It appears that the entries made in respect to these amounts retained were on pages of the fee book where appeared quarterly statements, of one of which we will give a copy herein. It was as follows:

"Page 318 of the fee book kept by defendant G. C. Hazelet, marked 'Plaintiffs' Exhibit K.' March 31, 1890, to fees for the month of January, $461.20. To fees for month February, $387.95. To fees for month of March, $435.60. Total fees for first quarter, $1,284.75. Defi-

ciency, $123.72, the amount the clerk is entitled to credit upon the foregoing statement of fees as follows, to-wit: Clerk's salary three months, $375.    Deputy's salary three months, $200.    Assistants' salary for three months, $375. Postage and express, $58.47.    Making assessors' books, $100.    Total, $1,108.47.

"I hereby certify that the above is a correct abstract of the legal fees received by me and the disbursements made as county clerk of Holt county, Nebraska, for the quarter commencing January 2, 1890, and ending March 31, 1890, as appears from the records of my office.

"Dated this 31st day of March, 1890.

"G. C. HAZELET,
"County Clerk of Holt County, Nebraska.

"Subscribed and sworn to before me this 1st day of April, 1890.                    JOHN MCBRIDE,

"Clerk District Court, and Seal."

In the one for the succeeding quarter appeared an entry of credit similar to the one in the foregoing copy, except that the one was for "making assessors' books," and the other "road books;" and the others with which we have to deal appeared in subsequent quarterly statements in similar form and in the same connections as credits claimed by the clerk and retained of fees collected.    It was agreed that the fee books should not be sent to the supreme court, but remain in the office of the county clerk unless they were required in the supreme court in an examination of the questions to be decided.    It was further agreed "that the items in dispute do not appear in such fee books upon any pages except the ones which are copied into this record as exhibits."

From the foregoing facts it is clear that the only entry of either of these items in the fee book was in the quarterly statement, and as a credit claimed, not as a fee collected.    The county clerk was required by law to prepare and deliver the books to the assessors, and the county board was authorized to pay him for preparing the books

50

such sum as it deemed just and equitable. (Compiled Statutes, ch. 77, art. 1, sec. 48.) If allowed, it became a part of his fees, or salary received, to be entered in the fee book as a fee collected; entering it in the statement as a credit without also showing it as a fee collected was not a compliance with the statute, which required it to be entered in the fee book; and by the entry made in the statement and retaining the $100 for each year of fees which he had received, and the omission of the further and proper entry of the amount in the list of fees received the clerk effected the reception of the sum stated over and above $1,500, the amount which by law he was entitled to as fees or salary. The county clerk was required by statute to prepare what was designated in this record "road books;" it was made of his duties, but for so doing it was not provided that he should receive any compensation other or further than he was entitled to generally as fees of the office, therefore any sum which might have been allowed him for the performance of such duty would have been illegal and unauthorized, and the retention of the sum of $100 each year by entering it as a credit in his quarterly statement was without warrant of law, and was an appropriation of the fees to a purpose or payment not contemplated by law. The clerk's duties as an officer were prescribed by the law, and his maximum compensation or salary was fixed, and he must perform the duties for the compensation as provided. (*State v. Silver*, 9 Neb., 85; *Bayha v. Webster County*, 18 Neb., 131; *Heald v. Polk County*, 46 Neb., 28.) That the county board examined the accounts which contained these claims for credits, and apparently sanctioned the acts of the clerk in crediting to himself and retaining the amounts herein in controversy, did not constitute them allowances to the county clerk or bar the county of a right to recover them in this action. In its examination of the reports of the clerk, and adjustment of the accounts between him and the county, the county board acted ministerially, and not judicially. Their approval of the reports or accounts was

not a judicial determination of any of the questions or matters considered, nor was it so conclusive that if a mistake had occurred it could not be corrected.

There were mistakes in the settlements of the board with the county clerk, in that he had not entered in his fee book the fees received for the certificates of liens furnished to the sheriff, nor the amounts he retained as payment for the preparation of the assessors' books, and in that he retained of the fees collected, amounts which he claimed as credits which he asked for preparation of "road books." (*Kemerer v. State,* 7 Neb., 130; *State v. Roderick,* 25 Neb., 629; *Heald v. Polk County,* 46 Neb., 28; *Bush v. Johnson County,* 48 Neb., 1.) These were not claims filed against the county, allowed by the board, and no appeal taken from such allowance. Had they been, they would have come within the rule announced in *Sioux County v. Jameson,* 43 Neb., 265, *Heald v. Polk County,* 46 Neb., 28, and *Cuming County v. Thicle,* 48 Neb., 888, that "Where a claim is presented to a county board for its examination and allowance or rejection, in the examination of such claim the board acts judicially, and its order or judgment allowing or disallowing the claim is conclusive unless reversed in appellate proceedings." (*Sioux County v. Jameson, supra.*) Here fees were retained under guise of credits claimed, and improperly sanctioned by the board in the examination and settlement of the accounts. The approval of the board was not final. (*Kemerer v. State, supra; Heald v. Polk County, supra;* and other cases cited to the same proposition.)

It is argued that if the county was entitled to recover the principal sums, it should not have been awarded interest on them, as it was. That the rule, "Where money is paid to one, who receives it believing that it is his due, he is not liable for interest upon it before demand is made, and refusal to pay, nor until he shall have reason to be satisfied that he ought to repay it," is applicable, and as no demand was pleaded or proved, the county should not have recovered any interest. The money here was com-

posed of fees in excess of the amount which the clerk could legally retain, and which it was his duty, prescribed by law, to pay without demand into the treasury of the county. His retention of the money rendered him liable for it and interest on it. The recovery of the interest was from the date of the termination of the clerk's term of office. In this allowance there was no error.

No available errors have been presented; hence the judgment of the district court must be

AFFIRMED.