LIBERTY B. CROUCH ET AL. V. W. MARION PYLE ET AL.

FILED OCTOBER 7, 1903. No. 12,780.

1. **County Commissioners:** ALLOWANCE OF CLAIMS. The board of county commissioners in allowing claims made for salaries of county officers and other claims against the county, where the

amounts to be allowed therefor are fixed by law and where no judicial inquiry is required to determine the amount, act in a mere ministerial capacity and have no power or jurisdiction to allow an amount in excess of the fixed statutory compensation.

2. ———: ———: JUDICIAL DISCRETION. Where judicial discretion is called for in the allowance of a claim presented, the board then acts as any other judicial body, and its findings can be questioned and set aside only by an appeal taken from the decision as provided by statute. Neither can the members of the board be made liable for a mere mistake made in passing judgment on the claim, the commissioners, in such case, being entitled to the same immunity as other judicial officers.

ERROR to the district court for Pawnee county: JOHN S. STULL, JUDGE. *Affirmed.*

*Ernest O. Kretsinger,* for plaintiffs in error.

*Albert S. Story* and *Ralph W. Story, contra.*

DUFFIE, C.

In December, 1895, A. E. and J. N. Hassler, proprietors of the Pawnee Republican, entered into a contract with the board of county commissioners of Pawnee county by which they were to publish the delinquent tax list of 1895 in the Pawnee Republican, and also caused it to be published in the Pawnee Press, for the sum of twenty cents for each description of land, other than town lots, and for each town lot included in the deliquent tax list the sum of ten cents. The proceedings of the board of county commissioners and all printing required by law to be published by the county during the year 1896, were to be published without cost, in consideration of the award to them of the publication of the delinquent tax list. October 1, 1896, the county treasurer furnished these publishers a delinquent tax list for publication. Prior to this date, the treasurer had been advertising delinquent lands by giving the amount of the tax due for the preceding year only, but an examination of the delinquent tax lists published in other counties led him to believe that this was not correct, and after consultation with one or more attorneys, among

others the county attorney, he prepared the delinquent list for 1895 by describing the lands and town lots as many times as there were years delinquent taxes due against the same. By this method, many of the descriptions of land, and of town lots, were repeated twenty or more times according to the number of years' taxes standing against the same, and the bill for publishing this delinquent list, at the rate of twenty cents for each parcel of land and ten cents for each town lot, amounted to $1,113.80; whereas if each tract of land and each town lot had been set forth but once in said publication with the full amount of taxes due against the same, the amount would have been but $313.90. A bill was presented to the board of county commissioners for the amount first above named which was audited and allowed by the board and warrants drawn and issued in payment of said bill. It is agreed that no appeal was ever taken from the order of the commissioners allowing said claim and no action was taken thereon, until a short time prior to the commencement of this suit, when the plaintiffs in error petitioned the board of county commisisoners to take action to recover the amount claimed to have been illegally paid for the publication of said delinquent list. No attention having been given to said petition, plaintiffs in error commenced this action making the commissioners who allowed said bill, and their bondsmen and the county of Pawnee, parties defendant, and asking that the amount so alleged to have been illegally allowed and paid might be recovered from said commissioners and their bondsmen for the use and benefit of the county. The district court dismissed the plaintiff's petition, overruled a motion for a new trial, and entered judgment against the plaintiffs in error for costs, and the case is now here on petition in error.

Several preliminary matters such as a defect of parties plaintiff, a defect of parties defendant, and a misjoinder of causes of action are urged by the defendants in error; but these matters we do not care to discuss as we have concluded that the case presented by the testimony, while one

of great difficulty and open to grave discussion, was correctly determined by the district court. It is alleged in the petition that the county commissioners, when they audited and allowed the account for publishing the delinquent list, well knew that said claim was illegal, extortionate and unjust, and that they had no legal authority whatever to pay for printing the same in excess of the sum of $313.90, and that the commissioners confederated and conspired with the publishers of the newspaper with the unlawful and corrupt purpose of cheating and defrauding the county of Pawnee and its taxpayers out of the sum of $799.90.

If there was evidence in the record to support these allegations of fraud and conspiracy on the part of the defendants in error, they would, no doubt, be liable to the county for any amount allowed in excess of the legal fees, but a critical examination of the record fails to show any dishonest motive on the part of any of the defendants or to disclose that they were not acting honestly in the allowance of this claim. The proprietors of the Pawnee Republican were obligated by contract to publish the tax list in question. This list of necessity came from the county treasurer and the publishers had nothing to do with making it out or in directing its form. The treasurer was the agent of the county to furnish the copy and it was not for the publishers to question the correctness of the form. They were to publish it as furnished, and might rely with confidence upon the officer, charged with the duty of preparing it, doing so in the proper manner and form. When published they presented their bill to the board of county commissioners. This was undoubtedly a claim which had to be audited and allowed under the provisions of section 37, article 1, chapter 18, Compiled Statutes, 1901 (Annotated Statutes, 4455). That the claim should be audited and allowed by the county board is conceded by the plaintiff in error, but it is insisted that as the amount to be allowed was fixed by law at twenty cents for each description of land, and ten cents for each town lot, that the board acted

ministerially and are liable to the county for any amount allowed in excess of the legal rate.

In *Kemerer v. State*, 7 Neb. 130, it is said:

"Where the compensation for services rendered for the county is definitely fixed by law, the audit of the same and drawing a warrant therefor, by the board, are merely ministerial duties unattended with the exercise of any official discretion, and therefore, in such case, the board can not make such compensation any greater nor any less than that fixed by law."

This case has received the approval of this court, in subsequent cases. *State v. Roderick*, 25 Neb. 629; *County of Logan v. Doan*, 34 Neb. 104; *Hazelet v. Holt County*, 51 Neb. 716, 723; *Perkins County v. Keith County*, 58 Neb. 323.

These cases, however, all refer to claims made against the county by officers for salaries or for fees, the amount of which was definitely fixed by statute, excepting *Perkins County v. Keith County, supra,* in which the claim had been once audited and allowed by the board and in which it was held that a second presentation of the claim was unnecessary. It is true that *Heald v. Polk County*, 46 Neb. 28, while recognizing and affirming the rule announced in *Kemerer v. State, supra,* apparently establishes a different doctrine, in so far as it recognizes the allowance by the board of a claim made by the clerk for $200 for making out a tax list; and while it is attempted to distinguish the case from *Kemerer v. State, supra,* we concede that the distinction made is not entirely clear to our minds. The true rule, we believe, is to inquire whether the board in passing upon a claim acts in a ministerial or judicial capacity. Where the compenstaion is fixed by law and no judicial inquiry is necessary to determine the amount—cases such as the allowance of the quarter salaries due the officers of the county—there can be no question that the board is acting in a ministerial capacity, having no discretion to use, no judicial powers to exercise. Where, however, a claim is presented for services performed under a contract fixing

the remuneration, or at the request of the county through its properly authorized agent where compensation has not been agreed upon or where damages are claimed against the county for some act committed, then the account must be audited and the discretion of the board exercised to determine whether the work done is in accordance with the contract, what the value of the services may be if no value has been agreed upon, what the damages sustained amount to where damages are claimed, and in all such cases the board is acting judicially and, like other judicial bodies, can be called to account only upon a showing that their acts were wilfully illegal and corrupt. In the case at bar, the commissioners had to examine and pass upon this claim the same as on any other claim for legal printing done the county. In other cases, unless the statute prescribes the form of the notice or other legal matter required to be published, the officer from whose office it emanates, prepares the form for the publisher who prints it as furnished. We do not think that it can reasonably be claimed that after the allowance and payment of a bill for such printing a taxpayer who failed to make any objection to the allowance of the bill on the ground that the notice was more lengthy than required, could maintain an action on behalf of the county to recover either from the publisher, or the commissioners who allowed the bill, the amount which he claims was excessively paid on account of the notice being of greater length than was necessary. Certainly, in such case no action could be maintained in the absence of a showing that the parties acted corruptly and extended the length of the published matter for the purpose of defrauding the county. Such a case does not differ greatly from the one we are considering. The form of notice of the sale of lands for delinquent taxes is not given by statute, the legislature contenting itself with naming the several matters that the notice must contain, leaving to the treasurer the duty of formulating the notice in his own way. In such cases common fair dealing requires that the publisher who, in good faith, publishes the notice for the requisite time

8

should be paid for his work, and the commissioners who audit and allow the bill, and against whom no evidence of bad faith exists, ought not to be held liable for so doing. The principle involved is not greatly different from that applied in *Brown v. County Commissioners of Merrick County*, 18 Neb. 355, 360.

We are satisfied that the judgment appealed from was the only judgment that could be entered in the case, and therefore recommend its affirmance.

POUND and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment appealed from is

AFFIRMED.