DOUGLAS COUNTY, APPELLANT, v. DUNCAN M. VINSON-HALER ET AL., APPELLEES.

FILED DECEMBER 5, 1908.   No. 15,488.

1. **County Judges:** LIABILITY FOR FEES. Where an action is brought against a county judge and his surety for a failure to report fees, in excess of the amount allowed him as compensation, earned, but not collected, it must appear that he wilfully omitted to

charge the prescribed fee with intent to evade the provisions of the act of 1877 (laws 1877, p. 215), or negligently omitted to collect such fees, or, in taking security therefor, negligently failed to require sufficient surety. *State v. Hazelet*, 41 Neb. 257; *Hazelet v. Holt County*, 51 Neb. 716; *Sheibley v. Dixon County*. 61 Neb. 409; *Boettcher v. Lancaster County*, 74 Neb. 148, limited and distinguished.

2. Marriage: STATUTES: CONSTRUCTION. The power given by section 8, ch. 52, Comp. St. 1899, to judges and clergymen to perform the marriage ceremony in this state is permissive, and not mandatory, except as to such officers as are given fees for the performance of such ceremony.

3. County Judges: FEES. The provisions of section 8, ch. 28, Comp. St. 1899, giving to the county judge, for any service performed by him in any matter within the jurisdiction of a justice of the peace, the same fees as are allowed by law to the justice of the peace for like services, are limited to those cases in which the county judge derives his power to perform the service solely from the grant to him of the ordinary powers and jurisdiction of a justice of the peace. It does not give him the right to charge a fee for marriage ceremonies, because the power to perform such ceremonies is not derived from such grant of the ordinary powers and jurisdiction of a justice of the peace.

4. Statutes: CONSTRUCTION. Where the meaning of a statute is doubtful, long usage is a just medium by which to expound it; and the fact that the officers whose duty it was to enforce the act of 1877 (laws 1877, p. 215) have for many years construed it so as not to require a county judge to report fees received for performing marriage ceremonies may properly be considered in construing a. statute by which it is claimed the right to such fees was given.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed with directions.*

*F. S. Howell* and *F. A. Shotwell*, for appellant.

*C. J. Greene, M. A. Hall, Smythe & Smith, Baxter & Van Dusen, J. W. Woodrough, George W. Shields* and *Byron G. Burbank, contra.*

CALKINS, C.

The defendant Vinsonhaler was county judge of Douglas county from January 4, 1900, to January 3, 1906, a

period embracing three terms, for each of which the defendant the American Surety Company was surety upon his official bond. During that time he reported all fees collected (other than fees for performing marriage ceremonies), and paid the excess, over and above the amount which he was permitted to retain as compensation for himself and deputies, into the county treasury, except the sum of $21.55, which sum was duly tendered to the plaintiff and by the plaintiff refused. He earned a large amount of fees which had not been collected nor received during his incumbency of office, and these he did not report; nor did he report having received any fees for marriage ceremonies, although it is conceded that he performed 1,819 such ceremonies. This action was upon his official bond to recover the amount of fees earned, but not collected, and the sum of $3 for each of said marriage ceremonies. The district court found that the defendant could not be charged with uncollected fees, except the marriage fees, and held defendant liable for $3 for each marriage ceremony performed, for which amount, with interest, and the $21.55 referred to, it rendered judgment in the sum of $6,862.92. From this judgment both parties appeal; the plaintiff challenging so much of the decision of the district court as refused to allow it to recover for fees earned and uncollected other than the fees earned for performing marriage ceremonies, while the defendant insists that the conclusion of the court in reference to the marriage fees is erroneous.

1. Prior to the act of 1877 (laws 1877, p. 215) the fees collected by the county judge and other officers named in said act belonged to such officers, and the county had no interest therein. These fees had been fixed upon such a liberal scale that the offices mentioned had in some localities already become more lucrative than in the opinion of the legislature their dignity and importance justified. To meet this condition it was necessary to either reduce the scale of fees allowed or to limit the amount which such officers might retain. As many localities were

yet sparsely settled, it was urged that the existing scale of fees could not be generally reduced without impairing the efficiency of the public service in the newer sections of the state, and the plan of limiting the amount of fees to be retained by the officer, with the incidental provision of turning the excess into the public treasury, was adopted. Section 1 of the act fixed the aggregate amount of fees which the county judge should retain, and directed that he pay the excess into the county treasury. It also contained a classification of counties, and a provision for employing deputies and paying them out of the excess. Sections 2, 3 and 4 we quote in full:

"Section 2. Each of the officers named in section one of this act shall on the first Tuesday of January, April, July and October of each year make a report to the board of county commissioners under oath showing the different items of fees received, from whom, at what time and for what service, and the total amount of fees received by such officer since the last report, and also the amount re-received for the current year.

"Section 3. Each of the officers named in section one of this act shall keep a book, which shall be provided by the county, and which shall be known as the fee book, and shall be a part of the records of such office, and in which shall be entered each and every item of fees collected, showing in separate column the name of the party, from whom received, the time of receiving the same, the amount received, and for what service the same was charged.

"Section 4. Any of the officers named in section one of this act, who shall omit to comply with the provisions of this act, or shall fail or neglect to keep a correct account of the fees by him received, or shall fail and neglect to make a report to the board of county commissioners as herein provided, or shall wilfully or intentionally omit to charge the fees provided by law, with intent to evade the provisions of this act, shall be deemed guilty of a misdemeanor, and, upon conviction, shall for each offense be fined in any sum not less than twenty-five dollars, nor

more than one hundred dollars; and any officer named in this act who shall make a false report under oath, shall be guilty of perjury, and punished accordingly."

It is significant that in each of these provisions it is the amount of fees received that is uniformly mentioned; and the fees earned, and not received, are nowhere alluded to. Section 2 provides that officers shall make a report of the items of "fees received, * * * the total amount of fees received" since the last report, also the "amount received" for the current year. Section 3 directs that the officer shall keep a fee book upon which shall be entered every item of "fees collected," showing the name of the party from whom "received," and the time of "receiving" the same, and the amount "received." If we are to construe the language used in its ordinary meaning, no interpretation is necessary. The statute simply requires the fees received or collected to be put upon the books and reported, and the language is too plain to be misunderstood. The principal reason urged upon the argument and in the briefs submitted for the interpolation of the word "earned," or some word of similar meaning, into this statute, so as to require fees which the officer had earned, but for any reason not collected, to be included in the report, is that this court has already so decided in cases which have been cited, and which we shall presently examine.

Before proceeding to do so, we will consider whether there exists any cause which would require such a construction of the statute in question, were it now being construed for the first time. It is suggested that the legislature had a right to and did assume that the officer would in each case collect the prescribed fee, and that all fees would therefore be received. If the statute had made no provision for the failure to collect fees, we might conclude that all fees were to be regarded as collected for services performed under such circumstances as would justify the officer performing the service in refusing to act until and unless his fees were paid in advance. The statute

does, however, recognize the fact that there might be a failure to demand the stipulated fees for services performed, and provides that, if such officer shall "wilfully or intentionally omit to charge the fees provided by law with intent to evade the provisions of this act," he shall be guilty of a misdemeanor. This provision would have been quite unnecessary if the statute were interpreted to require the report of fees earned, and not collected. For, if he were required to report fees, whether collected or not, the failure to collect would not evade the law, and the intent, which is made an element of the offense, could not exist.

It is said that the provisions of section 31, ch. 28, Comp. St. 1899, permitting a county judge to require fees to be paid in advance or security given therefor, furnish a reason why the statute of 1877 should be construed to hold a county judge liable for all fees earned. This section was enacted when all the fees collected belonged to the officer, and was evidently intended to assist the officer in the collection of such fees; but, if it be construed as a contemporaneous enactment, it is permissive in form, and contemplates the giving of credit for fees, for it provides that the officer may require payment in advance or security for such fees. If this statute has any bearing upon the proper construction of the act of 1877, it tends to show that the legislature recognized the practice of giving credit for fees.

In cases where the words used in the statute are doubtful, we may consider the consequences of any proposed construction, and should always prefer that which is consistent with acknowledged principles of constitutional law, and which is the least likely to result in hardship or end in absurdity. To require a county judge to collect fees provided for strictly ministerial acts before rendering the service would impose no hardship upon such officer, nor greatly inconvenience him in the performance of such duties. To make the same requirement in respect to fees earned in judicial trials or in the ex-

ercise of his probate jurisdiction would be not only impracticable, but it might in many cases result in an actual denial of justice. While the plaintiff may be compelled to pay or secure the payment of the costs made by him, he cannot be required to pay the costs made by the defendant; and it is quite conceivable that the refusal of a county judge to perform those services which would be necessary to enable a defendant to present his defense might result in a denial of the right to be heard in person and by witnesses, and infringe the provision of the constitution that all courts shall be open, and that every person shall have a remedy by the due course of law, and justice administered without denial or delay. Constitution, art. I, sec. 13.

There are fees for services not performed for either party, like the fee provided for the continuances arising by operation of law. In the exercise of the original jurisdiction given by the constitution in matters of probate, settlement of estates of deceased persons, appointment of guardians, etc., there frequently occur cases in which there is no responsible person to pay or guarantee fees that imperatively demand the performance by the county judge of services for which fees are prescribed. The argument of inconvenience is therefore not opposed to the plain meaning of the words used, but is in harmony therewith. So with the argument of contemporaneous construction. It is conceded that ever since the enactment of this statute it has been construed by the officers whose duty it was to enforce it as requiring county judges to account only for fees received, and this consideration, which sometimes constrains courts to give the words of a statute a different meaning from that which they would otherwise infer therefrom, is here in accord with the ordinary meaning of the words actually used.

This brings us to the consideration of the cases which, it is urged, have committed this court to a construction of the statute which would practically substitute the word

"earned" for the words "received" and "collected," where-
ever the latter occur.

In *State v. Hazelet,* 41 Neb. 257, a county clerk, who
was required to furnish the sheriff with a certificate show-
ing the amount of all lands and incumbrances upon lands
about to be appraised and sold as upon execution, for
each of which he was entitled to charge a fee of $2, en-
tered on his fee book 25 cents for each certificate. Upon
an order to show cause why a peremptory mandamus
should not issue to require him to report the full fee of
$2 for each certificate, he answered, not that the fee was
uncollected, but that the actual work of examining the
record and preparing the certificates had been performed
by some clerk or employee in his office other than his
deputy, and that whatever sum had been paid by the
sheriff in excess of the 25 cents reported had been paid
to the person who performed the labor connected with
the examination of the records and the preparation of the
certificates. This presented the question, not whether
the county clerk was liable for uncollected fees, but
whether the county clerk might, by the device employed,
sequester a portion of the fees earned and collected by
some one under his control. Such a proceeding was
clearly inhibited by the fourth section of the act, which
provides a penalty for the officer who, with intent to
evade the provisions of the act, wrongfully or intention-
ally omits to charge the fees provided by law; and the
court very properly held the answer insufficient. But in
so doing the court said: "There is no room for doubt,
under the sections above referred to (laws 1877, p. 215,
secs. 1-3), that it is the duty of each county clerk to keep
a fee book, and to enter therein every item of fees re-
ceived or earned by him for official services, and to make
an accurate report of the same to the county board." The
process of reasoning by which the word "earned" was read
into the statute is not given; and, since it was unneces-
sary to the determination of the question before the court

to so construe the law, we are constrained to believe that it was done inadvertently. The language of the judge writing the opinion should be understood as spoken in reference to the facts under consideration, and limited in meaning by those facts. *Brooks v. Marbury,* 11 Wheat. (U. S.) *78; *United States v. Burr,* 4 Cranch (U. S.), *470. The decision of the case in question was right, and the reasoning applied to the facts before the court sound; but beyond that we are not permitted to consider it as authority.

*Hazelet v. Holt County,* 51 Neb. 716, was an action against the clerk and his bondsmen to recover fees received for making road books and assessors' books, and fees collected for making the certificates of incumbrances mentioned in *State v. Hazelet, supra.* There was no question in the case of fees earned, but not collected; and, while the language of the opinion in *State v. Hazelet* was quoted with approval, that portion of it which relates to fees earned and uncollected had no bearing upon the case then being considered.

In *Sheibley v. Dixon County,* 61 Neb. 409, the question was presented whether the county clerk was required to enter in his fee book and report fees received for making a certificate to abstracts and fees received for taking the acknowledgments to deeds and mortgages. It was held that he was required to report such fees. The pleadings charge that the fees were collected. What the evidence established concerning this fact does not appear from the opinion; but the last paragraph contains this statement: "Another matter urged is that, although acknowledgments were taken by plaintiff, he did not in fact charge any fee for taking the same, and, therefore, should not be called upon to account for the same, never having received any money to account for. This is hardly a tenable position. The law cast upon him the duty of collecting this fee, and if he did not do so the fault was with him, and he should be compelled to account for the same. *State v. Hazelet,* 41 Neb. 257." It is conceded that the statute

imposes upon the county clerk the duty to use reasonable diligence to collect the fees prescribed for purely ministerial functions, and the facts in this case probably justified the conclusion that the fault was his and that he was guilty of negligence. For the reasons that we have already stated, the decision gains no support from *State v. Hazelet, supra,* and is to be regarded as resting upon its own foundation solely.

*Boettcher v. Lancaster County,* 74 Neb. 148, was an action against the clerk of the district court and the surety upon his bond for failing to account for the fees of his office in excess of the amount allowed him as compensation. It appeared from the record that at the expiration of his term fees to a considerable amount which Boettcher earned during his incumbency were uncollected; and the question was there presented whether the clerk of the district court was chargeable with such fees. It was there held that the county had a pecuniary interest in the services of the clerk and the earnings of the office, and that to the extent of that interest he was the agent of the county and was without authority to extend credit. This conclusion was partially, at least, based upon the theory that section 31, ch. 28, Comp. St. 1899, which provides that a clerk of the district court and other officers therein mentioned may in all cases require the party for whom any service is to be rendered to pay the fees in advance or give security, forbade the giving of credit by the clerk. It is not explained what the result would be if the clerk took the security provided for by statute and it should prove inadequate. If we are correct in what we have already said concerning this section, it offers no support to the argument that credit is not to be given. That circumstances might excuse a district clerk for failure to collect the prescribed fees was recognized in the opinion, when it was said: "Whether special circumstances might excuse a clerk for a failure to collect his fees is a question which does not arise in this case." And neither this case nor that of *State v. Several Parcels of*

*Land,* 82 Neb. 51, goes further than to hold that the unexplained failure of the clerk to collect fees for ministerial duties rendered him liable for the amount thereof. If we assume that the county is the principal and the officer the agent, and apply the ordinary rules governing the liability of principal and agent, it is very plain that, in a suit brought against one of the officers mentioned in the act of 1877 for fees not collected, the petition should charge that the officer had wilfully omitted to charge the prescribed fee with intent to evade the provisions of the act, or had negligently omitted to collect such fees, or had, in taking security therefor, negligently failed to require sufficient surety. That a failure to collect fees for purely ministerial services would support the charge of negligence is clear, while in case of fees earned in judicial and probate proceedings, where the right and propriety of demanding the payment of fees at the time of performing the service is doubtful, actual negligence should be shown. This conclusion is, we think, consistent with the actual decision in each of the cases to which we have referred, as well as with a just and proper interpretation of the statute under consideration. In the instant case there is neither allegation nor proof of want of diligence; and the evidence as to the amount of fees uncollected included the different classes of services we have mentioned, without distinguishing amongst the same. It necessarily follows that the judgment of the district court in respect to these fees was correct, and should be affirmed.

2. The plaintiff concedes that no specific fee can be collected for a public service unless it is authorized by statute; that, even where a duty to perform the act is imposed without the provision of any fee therefor, such duty must be performed for the compensation provided in other ways. The defendant contends that the power to perform marriage ceremonies conferred upon county judges is permissive, and not mandatory, and that no fees were provided for the performance of such ceremonies by the statutes in force during the period of defendant's incum-

bency of the office of county judge. Section 8, ch. 52, Comp. St. 1899, provides that every judge and justice of the peace, and every preacher of the gospel authorized by the usages of the church to which he belongs to solemnize marriages, may perform marriage ceremonies in this state. It was urged upon the argument that the statute, being permissive in form, should not be construed as imposing a duty upon any of the officers therein named to perform such ceremony. This question is not directly involved, but is proper to be considered in determining the principal question. The ordinary meaning of the word "may" is permissive, and it should receive that interpretation unless the rights of the public or third persons depend upon the power conferred, or it is necessary to give effect to the clear intention of the legislature that it should be construed as mandatory. Whether the grant of power to perform marriage ceremonies, permissive in form, should be construed as mandatory has not been the subject of consideration in any of the cases cited. Section 905 of the code provided that justices of the peace should have authority to solemnize marriages; and section 11, ch. 28, Comp. St. 1899, fixed the fee of such officers for such ceremonies at $3. Not only was no fee fixed for the performance of this ceremony by a minister of the gospel or by a judge, unless the statutes we shall hereafter consider gave such a fee to the county judge by implication, but the power of the legislature to give judges of the supreme court and the district court fees is limited by the constitutional provision that no judge of a supreme or district court shall receive any other compensation, perquisite, or benefit, for or on account of his office, in any form whatsoever, than the salary provided by the constitution. Constitution, art. VI, sec. 14. The performance of the marriage ceremony by clergymen and by judges of the higher courts is usually the result of voluntary arrangement. The usages of some church denominations forbid the solemnization of certain marriages which the law regards as valid, and these the clergymen of such churches should

not be required to perform. We can easily imagine circumstances in which it would seriously interfere with the performance of the ordinary duties of a supreme, or district judge to compel him to perform such ceremonies. We do not think the legislature intended to make the performance of this duty obligatory upon either. If there were no other provision, we might, in order to give persons desiring this ceremony the right to have it performed, hold the word "may" in section 8 of the marriage act (Comp. St. 1899, ch. 52) to mean "shall"; but the legislature has otherwise provided for the performance of this ceremony by justices of the peace, who are given a fee therefor, and we think that the right of the public and third persons to require the performance of this function is sufficiently conserved by holding it to be obligatory upon officers who are given fees therefor to perform such ceremonies.

3. This brings us to an examination of the statutes which the plaintiff contends gave to the county judge a fee for the performance of the marriage ceremony. We are much indebted to counsel, who have with great learning and laborious research given an exhaustive history of our legislation upon this subject from territorial times to the present. We think, however, that the provisions of the statute in force during the period of defendant's incumbency, considered as contemporaneous acts, are too plain to make it necessary for us to extend this opinion by recapitulating their history. In addition to the probate jurisdiction and his jurisdiction concurrent with the district court, a county judge is by section 2, ch. 20, Comp. St. 1899, given the ordinary powers and jurisdiction of a justice of the peace. His authority to charge fees is found in section 8, ch. 28, Comp. St. 1899, where he is given, first, authority to charge, for any services performed by him in any matter within the jurisdiction of a justice of the peace, the same fees as are allowed by law to justices of the peace for like services; second, for all civil actions triable in the county court, of which a

Douglas County v. Vinsonhaler.

justice of the peace has not jurisdiction, certain fees there specified, including a fee for issuing marriage licenses, but none for performing the ceremony; third, in matters of probate, another and different schedule of fees for services performed in that capacity. The question turns upon the construction of the word "jurisdiction" in section 8, ch. 28. This word may be defined in law as the power to hear and decide a legal controversy. In speaking of the exercise of a judicial power by a court or judge, we speak of such power as "jurisdiction," while the power of an officer to perform a purely ministerial act is designated as "authority." The defendant insists that the word should be given its ordinary meaning, and that the statute should be construed to give the county judge the fees of a justice of the peace only for services which he performs in a judicial, as distinguished from a ministerial, capacity.

There is no doubt that the word "jurisdiction" may be and is sometimes used in such connection that it should be construed as meaning "power" or "authority," and it is urged by the plaintiff that it should be so interpreted here. It is argued that, since section 2, ch. 20, gives to county judges the ordinary powers and jurisdiction of a justice of the peace, it was the intention of the legislature to fix for the services granted by said section 2 the same compensation as was given to justices of the peace for like services, whether they were ministerial or judicial. Conceding this, it could only apply to the jurisdiction and powers conferred upon a county judge by section 2, which he would not otherwise have possessed. We think it was the intention of the legislature to give to the county judge fees for the exercise of the jurisdiction and powers which he acquired solely by the grant to him of the ordinary powers and jurisdiction of a justice of the peace. But no reason is suggested why the legislature should give to a county judge the fees of a justice of the peace for the exercise of powers which were directly granted to him by other provisions of the law, merely because such powers were also included in the grant to him of the

ordinary powers and jurisdiction of a justice of the peace. While, therefore, we cannot give to the word the narrow construction contended for by defendant, we are satisfied that there is no reason for interpreting it so as to give the county judge the fees of a justice of the peace for the exercise of powers directly granted to him in cases where his authority does not depend upon the grant to him of the ordinary powers and duties of a justice of the peace.

4. It is conceded that the statute of 1877 has been construed by the administrative officers, whose duty it was to enforce the same, so as not to give a county judge the right to charge a fee for performing a marriage ceremony, or, at least, so as not to require any compensation which such county judge may have received for such performance of that ceremony, as the fees of his office, to be accounted for under the statute. It is one of the principles governing the interpretation and construction of statutes that, where the meaning of a statute is dubious, long usage is a just medium by which to expound it. *Franklin v. Kelley*, 2 Neb. 79; *State v. Holcomb*, 46 Neb. 88; *State v. Sheldon*, 79 Neb. 455; *United States v. Hill*, 120 U. S. 169. We think the operation of such a rule is just and salutary; and this court has gone so far as to hold that a construction so made will in some cases be regarded as adopted by the legislature, although the language of the statute would indicate a different meaning. *State v. Sheldon, supra.* That the right of the county judge to charge a fee for performing marriage ceremonies was doubtful, in the opinion of the legislature, is indicated by the fact that in 1907 section 8, ch. 28, *supra*, was amended so as to expressly allow him a fee for performing the same. If a contemporaneous construction may be considered to give the language used a different meaning, it may certainly be invoked as an aid where there is any doubt about the meaning that should be given to the language used, and the fact that we here find it in harmony with the interpretation arrived at from a considera-

tion of the language itself gives added confidence in the integrity of such an interpretation.

With reference to the $21.55, the defendant's answer alleges, and the plaintiff's reply admits, a tender and payment into court of that amount. As this sum equaled the amount which should have been found due the plaintiff, the judgment should have been for the defendant. It follows, from what we have already said, that the district judge should have found for the defendant upon all the issues.

The judgment of the district court is therefore reversed and the cause remanded, with instructions to enter judgment dismissing the plaintiff's petition, with costs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and cause remanded, with instructions to enter judgment dismissing the plaintiff's petition, with costs.

REVERSED.

FAWCETT and ROOT, JJ., not sitting.