STATE, EX REL. J. I. CASE THRESHING MACHINE COMPANY, APPELLEE, V. FRANK MARSH, SECRETARY OF STATE, APPELLANT.

FILED JANUARY 24, 1929. No. 26821.

O. S. Spillman, Attorney General, and Lloyd Dort, for appellant.

John J. Ledwith, H. N. Mattley and Upham, Black, Russell & Richardson, contra.

Kennedy, Holland, De Lacy & McLaughlin, Montgomery, Hall, Young & Johnsen, Ziegler & Dunn, Edgar M. Morsman, Jr., and Brogan, Ellick & Raymond, amici curiæ.

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.

Application by the plaintiff for a writ of mandamus directed to the defendant, Frank Marsh, secretary of state, requiring him to accept from the plaintiff the sum of $130 as plaintiff's occupation tax for the year 1928, and to execute a certificate as provided by law. The petition alleges that plaintiff first tendered the sum of $60 together with the annual statement required by law of foreign corporations, and that defendant refused the same upon the ground that the tangible property in the state of Nebraska belonging to plaintiff should be included in arriving at the total amount of its paid-up capital stock employed in Nebraska, and demanded the sum of $130; that thereupon plaintiff tendered $130 but the same was refused, defendant claiming that plaintiff should pay the sum of $2,000. Thereupon this action was brought. Defendant filed a general demurrer to the petition, which was overruled, and, defendant electing to stand upon his demurrer, judgment was entered awarding the writ, and defendant appeals.

The question for determination involves the proper construction of the following sections of the Compiled Statutes of this state for 1922 requiring the payment by domestic and foreign corporations of an annual occupation tax. They will be stated in substance or quoted as seems requisite for a proper understanding of the question.

Section 679 provides for the annual filing on July 1 of reports by corporations organized under the laws of this state.

Section 680 prescribes what shall be set forth in such report: Name of the corporation, location of its principal office, names and addresses of its officers and directors, date of annual election, amount of authorized capital stock and par value of each share, amount of capital stock subscribed, issued, outstanding and paid up, the nature and places of business, and any changes in the above particulars made since the last report.

Section 681: "At the time of filing such annual report it shall be the duty of every corporation, for profit incorporated under the laws of this state, to pay to the secretary of state an annual fee as follows: When the paid-up capital stock of the corporation exceeds one thousand dollars, but does not exceed ten thousand dollars, such annual fee shall be five dollars." Then follow provisions for payment of fees, in an ascending scale up to twenty-five million dollars paid-up capital, upon which the annual fee is fixed at two thousand dollars, and upon all paid up capital in excess thereof twenty-five hundred dollars.

Section 682: "Each foreign corporation for profit, doing business in this state, and owning or using a part or all of its capital or plant in this state and subject to compliance with all other provisions of law, and in addition to all other statements required by law, shall make a report in writing, to the secretary of state, annually, during the month of July, in such form as the secretary of state may prescribe. The report shall be signed and sworn to before an officer authorized to administer oaths, by the president, vice-president, secretary, superintendent or managing agent in this state, and forwarded to the secretary of state."

Section 683 provides for reports by foreign corporations, including all the particulars mentioned in section 680, and in addition the following: "7. The nature and kind of business in which the company is engaged and its place or places of business, both within and without the state. 8. The name and location of its office or offices in Nebraska, and the name and address of the officers or agents of the corporation in charge of its business in Nebraska. 9. The value of the property owned and used by the company in Nebraska, where situated, and the value of the property owned and used outside of Nebraska and where situated."

Section 684: "Upon the filing of such report with the secretary of state, it shall be the duty of every foreign corporation, for profit now or hereafter doing business in this state, to pay to the secretary of state as an annual fee the

same amount as the annual fee prescribed in the third next preceding section (681) for corporations incorporated under the laws of this state."

Section 688 requires the secretary of state to deliver to the corporation a certificate of compliance with the above sections.

Section 697: "Any county clerk shall, upon request of the secretary of state, furnish him with such information as is shown by the records of his office concerning corporations located within his county, and subject to the provisions of this article. The secretary of state, or any person deputed by him for the purpose of determining the amount of fees due from such corporation, shall have authority to investigate and determine the facts showing the proportion of the paid-up capital stock of the company represented by its property and business in Nebraska."

The contention of the plaintiff is that under these sections the occupation tax of foreign corporations should be calculated upon the proportion of its paid-up capital used to transact its business in the state of Nebraska; while defendant contends that it should be calculated upon the total amount of the paid-up capital of the corporation. In reply, plaintiff insists that, if the construction contended for by defendant is the true one, the statute is in conflict with the Constitution of the United States, as an unlawful burden upon interstate commerce, as a tax upon property outside of the state of Nebraska, as denying the plaintiff the equal protection of the laws, and as taking property from plaintiff without due process of law. If plaintiff's construction is the true one, he is entitled to the relief prayed. If defendant's construction is adopted, it will be necessary to consider the constitutional objections above noted.

We will, therefore, first examine the question of construction; but we must first determine whether or not the statutes are a proper subject for construction, and this depends upon whether or not they are clear and unambiguous or whether the language employed by the legislature is

susceptible of more than one meaning. Perhaps we might rest this determination upon the fact that a distinguished attorney general of this state and several secretaries of state have adopted plaintiff's construction, while the present secretary takes the opposite view, but we have considered the question independently, and have no hesitancy in pronouncing the sections of the law ambiguous and requiring construction. The uncertainty arises out of the use of the words "same amount" when considered with the other provisions of the act. Do they mean an equal amount in dollars and cents determined by the total paid-up capital, or such portion as is owned or used in this state?

The question is not free from difficulty. Our purpose, of course, must be to discover and declare the intention of the legislature, and it seems proper to recall briefly the rules of law by which such intention is to be found. Any supposed intention must be consistent with the words of the enactment taken in their ordinary and accepted meaning, unless it clearly appears that they were used in a different sense. The reason and intention of the lawgiver, however, will control the strict letter of the law (State v. Drexel, 75 Neb. 614) when the latter would lead to a palpable injustice or absurdity. Kelley v. Gage County, 67 Neb. 6. Each and every part of the statute must be given effect. The history of the legislation and the old law upon the same subject, as well as the general object, spirit and purpose of the law may be considered.

We will be aided by a consideration of the history of the legislation as affecting some of the above questions. It began with chapter 25, Laws 1909, whereby a nominal fee was fixed in an ascending scale applicable to all corporations, domestic and foreign, based upon the capital stock of each corporation. By chapter 29, Laws 1911, the above act was amended by providing that the basis of the tax should be the *paid-up* capital stock of the corporation. This change, apparently, was made because it seemed unfair to require payment upon the total capital stock in

cases where only a portion of it was paid in and actually used in the business.

It seems probable, though we do not decide the point, that both of the above acts, as applied to foreign corporations, were obnoxious to the Constitution of the United States under the decisions of *Western Union Telegraph Co. v. Kansas*, 216 U. S. 1, *Pullman Company v. Kansas*, 216 U. S. 56, and *Ludwig v. Western Union Telegraph Co.*, 216 U. S. 146.

However, chapter 240, Laws 1913, the present law, was enacted amending that of 1911.

Whether or not the legislature may discriminate between foreign and domestic corporations in the assessment of occupation taxes, it is perfectly clear from a consideration of these three acts that it was the intention of the legislature to put domestic and foreign corporations upon an equality in this regard, no distinct or separate treatment being had in the first two acts, and it being provided by section 684 of present act that a foreign corporation pay the "same amount" as that prescribed for corporations incorporated under the laws of this state  By section 681 domestic corporations are required to pay an occupation tax based upon the amount of their paid-up capital, and it seems to be the contention of the defendant that, therefore, if foreign corporations are to pay the same amount, the tax must be computed upon *their* paid-up capital; but this leaves out of view the underlying thought involved in the expression "paid-up capital" as applied to domestic corporations; that is, the amount employed in its business, which is under the protection of the laws of the state and properly subject to taxation.  This was apparently the determining factor in the amendment of 1911 changing the law by substituting the words "paid up" for "authorized" capital.  Paid-up capital of a domestic corporation, in view of these circumstances, is quite different from paid-up capital of a foreign corporation, which, as such, is not subject to local taxation, or no portion of which is employed in the state.  It would seem, therefore, that, if the foreign cor-

poration is to pay the *"same amount"* required of a domestic corporation, the words "paid-up capital" must be understood in *that sense in which they are applied to the latter.* In other words, if all corporations are to be treated alike, and the basis of the tax as to domestic corporations is the amount of capital actually engaged in the prosecution of its business, the same basis should apply to foreign corporations. If the foreign corporation is to pay the same amount as the domestic corporation, the conclusion is irresistible that the intention was to place them upon an equality. Equality is not secured unless the computation in both cases is made upon the same basis. The law does not say that the amount shall be computed on the paid-up capital of the foreign corporation, but that the latter shall pay the same amount as a domestic corporation, and, as appears later on, provides how that amount shall be determined.

Again, section 682 requires a report from each foreign corporation "owning or using a part or all of its capital or plant in this state;" and section 683 requires a statement of how much capital is employed within and how much without the state. The evident intention was (1) to tax only such foreign corporations as used part or all of their capital in the state, and (2) to base the tax exaction upon the amount so used. Now, the business of the foreign corporation subject to an occupation tax in this state is only such portion thereof as is transacted in this state. This state has no power to project even its taxing arm beyond the territorial borders and levy upon property there located. There is a presumption that the legislature intended to tax only that which it had the constitutional power to tax *(Singer Sewing Machine Co. v. Brickell,* 233 U. S. 304), and this is a proper consideration in construing the law. Defendant contends that this is not a tax but a condition imposed for doing business in the state; but these questions are unimportant, in view of the construction we have adopted, the result being the same whether it is a tax or an occupation fee.

But when the provisions of the act specially applicable to foreign corporations are considered, the intention of the legislature to assess the occupation tax upon the basis of the amount of capital employed in the prosecution of its business in the state of Nebraska, and not upon the entire paid-up capital of such corporation, seems more clearly manifest. What purpose would be subserved by the provisions of section 683 requiring the foreign corporation to state in its report "the value of the property owned and used by the company in Nebraska, where situated, and the value of the property owned and used outside of Nebraska and where situated," unless it had some relation to the computation of the tax, the amount of which is determined, with reference to both domestic and foreign corporations, from the statements contained in their respective reports? If the calculation was, in each case, to be made merely upon the basis of paid-up capital, the provisions just quoted from the requirements of the report of foreign corporations would be entirely useless. A construction of a statute will not be adopted which results in the requirement of useless and of absurd acts except where its terms are positive and unavoidable. *State v. Cook,* 178 Mo. 189. Especially is this correct when those acts have no relation to the thing to be accomplished, as would be the case if defendant's construction were adopted.

Leaving out of consideration the maximum restriction of $2,500, a construction which would require, for example, the United States Steel Corporation with a capital of a billion dollars, though only $500,000 was employed in the state, to pay 20 times the occupation tax of a domestic corporation with paid-up capital of $500,000, would seem to be absurd, viewed as a compliance with the provision for paying the "same amount." With the restriction added, such construction would be equally absurd when applied to cases below the maximum. We cannot presume that by inserting these expressions the legislature did a vain thing; and we are not permitted to disregard any part of the en-

actment, but, if possible, must construe it so as to give effect to every word and phrase contained in it.

But there is further confirmation of the correctness of the construction we have adopted in the latter portion of section 697, above quoted, the language of which is as follows: "The secretary of state, or any person deputed by him *for the purpose of determining the amount of fees due from such corporation, shall have authority to investigate and determine the facts showing the proportion of the paid-up capital stock of the company represented by its property and business in Nebraska.*" (Italics ours.) This provision seems specially applicable to foreign corporations, only a portion of whose paid-up capital is used in the prosecution of its business in this state, and is consonant with the basic principles underlying the power to levy taxes above referred to.

Another argument strongly urged by plaintiff is that the continuous interpretation of the statute in question, placed upon it by the officers of the state charged with its enforcement, together with the fact that, notwithstanding such interpretation, although five sessions of the legislature have been held during that time, no attempt has been made to amend the law, is such an administrative and legislative construction upon the act as should be followed by the court. Such construction is of great persuasive force, and will ordinarily be adopted by the courts when it does not do violence to the language, purpose or policy of the act. *Douglas County v. Vinsonhaler*, 82 Neb. 810; *United States v. Minnesota*, 270 U. S. 181.

Defendent argues that, at the time fixed for filing the report, a foreign corporation might have "but a small amount of assets or capital stock employed in the state, and within a minimum period thereafter might employ all of their financial advantage against a competitor in this state," and therefore the construction we have adopted is unfair and discriminatory. This is an inherent difficulty in all tax laws. A time is fixed (April 1) at which returns of personal property for assessment shall be made,

which reaches only property owned at that time. After April 1 the taxpayer may acquire a large amount of property which will escape taxation unless he continues to hold it until the next return day. It can hardly be presumed that a foreign corporation will withdraw its capital from the state each year on June 30, so as to escape a reasonable occupation tax. In the natural order of things, as the business increases each year the tax will augment correspondingly. But this is a matter for legislative consideration. And, moreover, it is provided by section 699 that "a corporation shall not be required to file its first annual report under this article until the proper month hereinbefore provided for the filing of such report, next following the expiration of six months from the date of its incorporation or admission to do business in this state."

We are clearly of the opinion that the law, properly construed, subjects to an occupation tax only that amount of the capital of foreign corporations actually employed in carrying on its business in this state. It will not be necessary to discuss the constitutional questions learnedly and exhaustively presented by the briefs.

There being no dispute as to the correctness of the amount tendered under the construction adopted by this opinion, the judgment of the district court is

AFFIRMED.