WILLIAMS *v.* ALWYNE JORDAN CURING PLANT, et al.

No. 42409          October 22, 1962          145 So. 2d 686

*Laurel G. Weir,* Philadelphia, for appellant.

*Lawrence W. Rabb,* Meridian, for appellees.

Jones, J.

This is a workmen's compensation case involving a claim for hernia. The claim was denied by the Commission, and the Circuit Court of Neshoba County affirmed the Commission.

Section 6998-12, Mississippi Code of 1942, requires claimant to show by a preponderance of the evidence:

"1. That the descent or protrusion of the hernia or rupture immediately followed as the result of sudden effort, severe strain, or the application of force to the abdominal wall;

"2. That there was severe pain in the region of the hernia or rupture;

"3. That there has been no descent or protrusion of the hernia or rupture prior to the accident for which compensation is claimed;

"4. That the physical distress resulting from the descent or protrusion of the hernia or rupture was noticed immediately by claimant, and communicated to his employer within a reasonable time; and

"5. That the physical distress following the descent or protrusion of the hernia or rupture was such as to require the attendance of a licensed physician or surgeon within five (5) days after the injury for which compensation is claimed. Postoperative hernias shall be considered as original hernias."

Specifically, the Commission held that the proof did not meet requirements 1 and 5.

Claimant testified that on January 28, 1961, while employed at the curing plant and while lifting half of a hog, he felt a sting or severe pain in his left side. He

had to lie down on a table for sometime. He had never been ruptured before. While he was lying on the table his employer entered and he told him, the employer, what had happened, telling him of the pain and that it occurred while he was lifting half of a hog. The hogs weighed from 100 to 200 pounds. The employer asked him if he wanted to go to a doctor, but the claimant decided not to do so, thinking that his injury was slight. This was on Saturday. On the following Monday, January 30, he went to see Dr. Leigh. He testified he went to the doctor on the 30th because "it was sore" and he wanted to find out what it was. The doctor on that day made no physical examination of the claimant. He asked him if he, the claimant, wanted to go to the hospital, and he answered, "Not unless it was a have to case." The doctor did not require him to go to the hospital but gave him some medicine for his stomach. He said the pain in his side "stung like a wasp." On February 1st, the doctor did send him to the hospital where he was kept until February 15. He thought he had a pulled muscle in his chest and did not look to see whether he had a protrusion. After he left the hospital he returned to the doctor and asked him if the soreness in his side could be caused from "this up here." He further told the doctor, "Sometimes I can take an swkward step or something and it stings." He testified he asked the doctor about the soreness in his side, what was causing it, and then he examined him.

Mr. Alvin Jordan, the employer, corroborated the claimant, who had been in his employ for more than a year; that he found Mr. Williams on Saturday, January 28th, lying on a table, on which meat was wrapped, with severe pains in the lower part of the stomach. He was then advised by Williams that he had lifted half a hog upon the block and "it almost doubled him up"; that this had happened that morning; after this, the man was not able to work and he went to the doctor on

January 30th; that he had no knowledge of any prior rupture; that he saw Mr. Williams about 7:30 A.M. on January 28th and at that time he was not injured.

Dr. R. L. Moore testified that on May 5, 1961, he operated on Williams for a bilateral direct inguinal hernia. He testified that people have hernias often without knowing it.

Dr. J. H. Leigh testified for the carrier. He said he first saw Williams on January 26th, when he gave him some tranquilizers and advised dental consultation. There was a note at the top of the doctor's chart indicating that Williams told him "he picked up some meat yesterday and set it on a block and when he did he broke out with a cold sweat." Unless the doctor's date is wrong, that would have made the accident on January 25th. He testified that Williams came to him on January 30th with a headache, not feeling well, and with a burning and hurting beneath and behind the chest bone, and a burning in the hands and fingers; that the claimant at that time was sore and tender to pressure in the pit of the stomach; he did not insist that he enter the hospital but gave him some tablets and tranquilizers.

On February 1st claimant was complaining of burning in the pit of the stomach, across the margin of his ribs on the left, both above and below the margin of the ribs, and with soreness and pain in his left chest. He was then sent to the hospital, where he stayed for fifteen days. The doctor got the impression that he had a strain in that region, and he thought Williams had picked up a refrigerator one day. The doctor did not have the hospital records with him and was stating this from his recollection. In the hospital, treatment was for his left chest, indigestion, nervousness, and general condition. Electrocardiagrams were made but they were unable to establish any heart condition. No examination for hernia was made in this fifteen days at the hospital.

After he was discharged from the hospital, claimant returned on the 17th complaining of a burning in the pit of his stomach, extending across the left costal margin and also in the left lower abdomen. Finally at that time, he was examined for hernia and was found that he had a small left inguinal hernia and a potential hernia on the right. He did not know when he made the note about Williams' lifting the hog.

The doctor did not give an opinion of when or how the hernia occurred because of the fact that the first time he saw it was on February 17th. Nor did he ever account for the pain below the belt line on the left side until the hernia was discovered. He said, however, that the hernia could have started when he picked up the meat and he would not say that it didn't happen as the claimant testified. He further testified that, when he discovered the hernia, he could not say that he found a real knot as sometimes they form a knot and sometimes they do not; that the word "descent" means going down; that inguinal hernias occur in the pubic region and when they make complete descent, they descend into the scrotum; and that the one claimant had had not descended into the scrotum when he saw him. In other words, there could be a descent without a protrusion; and that the descent could be ascertained by the docter extending his finger through the inguinal ring, having the patient cough or strain, and the abdominal contents would be felt. He made no examination for hernia until February 17.

As hereinbefore stated, the Commission found that the claimant did not prove by a preponderance of the evidence the requirements 1 and 5 of the statute. It may have been that this was upon the theory that a preponderance of the evidence required direct evidence as to the descent or protrusion and as to the physical distress requiring the attendance of a physician within five days. But, direct evidence is not required. The

case may be proved by circumstantial evidence. 100 C.J.S. 595, Sec. 547(5); Pearson, et al. v. Dixie Electric Power Association, et al., 219 Miss. 884, 70 So. 2d 6.

There is practically no dispute in the evidence. The circumstantial evidence is overwhelming that on January 28th the claimant received this injury. It is not denied that he went to see the doctor on the 30th and that he went because he was suffering. Certainly, the requirement of Item 5 was met. It is undisputed that the claimant had no previous rupture. The claimant's immediate suffering, the stings and pains in his side, continuing for a period of 17 or 18 days, and finally resulting in the discovery of the hernia, establishes to us that there was a descent, even though there was no protrusion, on the 28th, and that it immediately followed the lifting of the half hog.

This is a case where the claimant did all that he was required to do. He saw the doctor, complaining of pain and telling of what had happened. We do not think under the circumstances he should be penalized because of the failure to discover and because of the lack of an examination for hernia until February 17th. As was said in Lucedale Veneer Co. v. Rogers, 211 Miss. 613, 48 So. 2d 148, the construction of workmen's compensation statutes must be sensible. That was a hernia case and might be compared with the instant case. See also the case of Lindsey v. Ingalls Shipbuilding Corp., 219 Miss. 437, 68 So. 2d 872. It is our firm conviction that the Commission and the circuit court were in error in that there was no substantial evidence on which to base a denial of compensation herein. The evidence was the other way. The case is, therefore, reversed and judgment entered here for claimant and the case is remanded to the Commission for the ascertainment of the benefits to which the claimant is entitled.

Reversed and remanded.

*Lee, P. J.,* and *Kyle, Ethridge* and *Rodgers, JJ.,* concur.