REQUESTED BY: Forrest D. Chapman, Executive Director Nebraska Liquor Control Commission
You have asked four questions concerning Nebraska Brewpub licenses:
 1. Can the holder of a brewpub license also hold a beer wholesaler's license?
 2. If so, can the holder of a brewpub license retain other retail licenses along with the wholesale beer license?
 3. Can the holder of a brewpub license also hold a beer manufacturer's license?
 4. Can the holder of a brewpub license legally sell its beer to Nebraska licensed beer wholesalers?
We find that the answer to questions 1, 3 and 4 is "no", and so question 2 is inapplicable.
The category of liquor license known as a "brewpub license" was created through LB 1089 enacted during the 1988 legislative session. The basic rights of a brewpub licensee are defined in Neb. Rev. Stat. § 53-123.14 (1993):
 Any person who operates a brewpub shall obtain a license pursuant to the Nebraska Liquor Control Act. A license to operate a brewpub shall permit the holder to produce on the brewpub premises a maximum of 5,000 barrels of beer per year for sale on draught for consumption on the premises. The holder of a brewpub license may also not sell more than 50 percent of his or her annual production for consumption off the premises. The license holder shall serve food on the premises and shall otherwise be a restaurant. The brewpub license issued pursuant to this section shall be the only license required for the manufacture and retail sale of beer for consumption on or off the licensed premises, except that the sale of any beer other than beer manufactured by the brewpub licensee, wine, or alcoholic liquor by the drink for consumption on the brewpub premises shall require the appropriate retail license. Any license held by the operator of a brewpub shall be subject to the act. The holder of a brewpub license may obtain an annual catering license pursuant to § 53-124.12 or a special designated license pursuant to § 53-124.11.
LB 1089 also amended two statutes designed to prevent "tied house" arrangements.
 (1) No manufacturer or wholesaler shall directly or indirectly:
 (a) Pay for any license to sell alcoholic liquor at retail or advance, furnish, lend, or give money for payment of such license;
 (b) Purchase or become the owner of any note, mortgage, or other evidence of indebtedness of such licensee or any form of security therefor;
 (c) Be interested in the ownership, conduct, or operation of the business of any licensee authorized to sell alcoholic liquor at retail; or
 (d) be interested directly or indirectly or as owner, part-owner, lessee, or lessor thereof in any premises upon which alcoholic liquor is sold at retail.
 (2) This section shall not apply to the holder of a farm winery license or a brewpub license.
Neb. Rev. Stat. § 53-169 (1993). [Emphasis added].
 No person licensed as a manufacturer or wholesaler of alcoholic liquor shall be permitted to receive any retail license at the same time. No person licensed as a retailer of alcoholic liquor shall be permitted to receive any manufacturer's or wholesale license at the same time. This section shall not apply to the holder_of_a farm winery license or a brewpub license.
Neb. Rev. Stat. § 53-171 (1993). [Emphasis added].
The answer to all four of your questions hinges on the proper interpretation of the final sentences of § 53-169 and § 53-171: "This section shall not apply to the holder of . . . a brewpub license."
First, it could be argued that the phrase allows any holder of a brewpub license to hold any combination of other licenses, whether they be in the nature of a manufacturing, wholesaling, or retail license. Under that interpretation, an applicant would merely need to obtain a brewpub license and open a brewpub in order to be exempt from all other statutory restrictions concerning the three-tiered system, which traditionally has prohibited overlapping interests among manufacturers, wholesalers, and retailers of alcoholic beverages.
Second, the phrase arguably could be interpreted to mean that the holder of a brewpub license may obtain any other class of license, but only with respect to the beer brewed on premises under the brewpub license. This interpretation would allow a brewpub to obtain a manufacturer's license to sell the beer to wholesalers, and/or a beer wholesale license to sell the beer to other retailers.
Neither of these interpretations is supported by the legislative history of LB 1089. To the contrary, the bill's sponsor said that all the beer manufactured by brewpubs would be sold at retail on the premises. During floor debate of LB 1089 on January 12, 1988, Senator Gary Hannibal, principal introducer, said:
 [Brewpubs] manufacture the beer . . . and they sell that beer right on the premises, right on the manufacturing premises. . . . What we do have to change, if we want to allow this to happen is to allow you to be two things at once. We have a three-tiered system in this state, . . . you can be a manufacturer, you can be a distributor, or you can be a retailer. . . . But you cannot be any two of these things under our three-tiered system in this state. Since we are going to make you a manufacturer and a retailer, at the same time with this kind of legislation, that is against our present law. So what we are doing is carving out a little niche that allows you to do both of these things at once . . . . what we have here is a little niche, a little special area that says you can brew the beer on the premises and you can sell it to those patrons, so you are a manufacturer and a retailer at the same time. . . . [W]e are not making major changes to the liquor laws, but we are making a little change that will allow you to be two things at once.
So the legislative history makes clear that the last sentence of § 53-169 and § 53-171 is a mere acknowledgment that brewpubs by definition perform two functions — the manufacture of beer and the retailsale of that beer on the premises, for consumption either on or off the premises. This interpretation is also supported by the fact that § 53-124.14 makes specific reference to the types of licenses a brewpub licensee may obtain in addition to the brewpub license. A "manufacturer's license" and a "wholesale license" are not among those listed. Farm wineries which also combine manufacturing and retailing elements are given specific statutory authorization to sell their products "on-site at wholesale." Neb. Rev. Stat. § 53-123.11 (1993).
Basic principles of statutory construction established by the Nebraska Supreme Court require that we (1) look at the statutory objective to be accomplished, problem to be remedied, or purpose to be served, and then place on the statute a reasonable construction which best achieves its purpose, rather than a construction that will defeat the purpose; (2) conjunctively consider and construe all statutory components of an act to determine the intent of the Legislature, so that different provisions of the act are consistent, harmonious and sensible; and (3) give greater weight to statutes which contain specific provisions on a subject, rather than to statutes which are more general in nature. See, e.g.State v. Joubert, 246 Neb. 287 (1994);Anderson v. Nashua Corp., 246 Neb. 420 (1994); andIn re Guardianship Conservatorship of Bloomquist,246 Neb. 711 (1994).
Applying these basic principles of statutory construction, we conclude that holders of brewpub licenses cannot obtain beer wholesaler's licenses, nor beer manufacturer's licenses, nor sell their beer to wholesalers.
Sincerely,
 DON STENBERG Attorney General
 Laurie Smith Camp Deputy Attorney General
APPROVED:
Don Stenberg
Attorney General