REQUESTED BY: Senator Roger Wehrbein, Chairman, Appropriations Committee
You have asked a number of questions regarding the obligation of the state to reimburse counties for the cost of maintaining inmates who have been convicted of offenses "punishable by imprisonment" in facilities under the jurisdiction of the Nebraska Department of Correctional Services. [DCS].
A recitation of applicable statutory provisions will precede our discussion of the issues raised in your letter.
Neb. Rev. Stat. § 28-105 (1995) provides in part:
 All sentences of imprisonment for Class IA, IB, IC, ID, II, and III felonies and sentences of one year or more for Class IV felonies shall be served in institutions under the jurisdiction of the Department of Correctional Services. Sentences of less than one year shall be served in the county jail. . . .
Neb. Rev. Stat. § 28-106 (1995) provides in part:
 Sentences of imprisonment in misdemeanor cases shall be served in the county jail, except that in the following circumstances the court may, in its discretion, order that such sentences be served institutions under the jurisdiction of the Department of Correctional Services:
 (a) If the sentence is for a term of one year upon the conviction of a Class I misdemeanor or for a combined term of one year or more in the event of conviction of more than one misdemeanor offense; [or]
 (b) If the sentence is to be served concurrently with the term for conviction of a felony. . . .
Neb. Rev. Stat. § 29-1002 (1995) provides in part:
 The cost of keeping and maintaining any prisoner after his or her conviction of any offense punishable by imprisonment in a Department of Correctional Services adult correctional facility, wherever he or she may be kept and confined, shall be paid by the state according to the rate which may be established by law at the time when such services may be rendered or expenses incurred.
Neb. Rev. Stat. § 29-1003 (1995) provides in part:
 The Director of Administrative Services shall allow the account for the costs as provided for in Section 29-1002, and draw warrants upon the treasury therefor, upon being furnished with a certified copy of the judgment or sentence of the court under which such convict is in prison, and an account verified by affidavit, showing where and how long such convict has been kept, pursuant to such sentence.
Neb. Rev. Stat. § 47-119 (Cum. Supp. 1996) provides:
 [S]tate prisoner shall mean a person who has been convicted of a felony and has started to serve the sentence imposed under such conviction.
Neb. Rev. Stat. § 47-121 (1993) provides in part:
 The county board of each county . . . confining state prisoners within its jails shall receive $3.50 per day for boarding such prisoners. . . . The sheriff or county board of corrections shall, on the first day of January, April, July, and October of each year, make a report in writing to the Director of Administrative Services of the number of state prisoners in custody in such county for the last three months before making its report, when committed, and for what time, [and] the amount due the county for boarding such prisoner or prisoners. . . . Thereupon the director shall quarterly draw his or her warrant upon the State Treasurer for the amount due to the county treasurer of the county, and the amount drawn shall be credited to the general fund of the county.
Basic principles of statutory construction established by the Nebraska Supreme Court require that we (1) look at the statutory objective to be accomplished, problem to be remedied, or purpose to be served, and then place on the statute a reasonable construction which best achieves its purpose, rather than a construction that will defeat the purpose; and (2) conjunctively consider and construe all statutory components to determine the intent of the legislature, so that different provisions are consistent, harmonious and sensible. See, e.g., State v.Joubert, 246 Neb. 287 (1994); Anderson v. Nashua Corp.,246 Neb. 420 (1994); and In Re Guardianship Conservatorship ofBloomquist, 246 Neb. 711 (1994).
Legislative history is not available to assist us in ascertaining the legislature's purpose in enacting §§ 29-1002,29-1003, 47-119 and 47-121 because the core language of the statutes originated in the legislature's earliest years. The legislative history of bills making technical revisions to these statutes over the years does not explain the legislature's original intent and purpose. DCS annual reports inform us that Nebraska inmates were confined in county jails and federal facilities in Nebraska's first years of statehood. It is likely that the language in §§ 29-1002, 29-1003, 47-119 and 47-121
originated at a time when many inmates who were convicted of felonies and sentenced to be imprisoned for one year or more served their time in county jails due to a lack of state correctional facilities.
Sections 28-105 and 28-106 were enacted as part of the Nebraska Criminal Code in 1977 and reflect the more modern intent of the legislature.
Although others may reach a different conclusion, we find that the reasonable and sensible construction of the above statutes is that inmates who are sentenced to serve a term of imprisonment of one year or more may be confined in facilities under the jurisdiction of DCS at the expense of the state. Such inmates would include those sentenced to serve one year or more in prison for felony convictions, Class I misdemeanor convictions, consecutive misdemeanor convictions, misdemeanor convictions to be served concurrently with felony convictions, and misdemeanor sentences to be served consecutive to felony convictions. Inmates sentenced to terms of imprisonment of less than one year are to be confined in county jails at the expense of the county. Such inmates would include those convicted of misdemeanors or felonies having a sentence or combined sentence totaling less than one year. The fact that an inmate has been sentenced to probation or to a term of confinement for less than one year in a county jail upon conviction of a felony would not cause the state to be responsible for the cost of "keeping and maintaining" the inmate. Our conclusion is reinforced by the fact that the legislature has appropriated no funds for payment to counties under § 47-121, and the fact that the counties have historically acquiesced in bearing the cost of maintaining convicted felons who are sentenced to serve less than one year in the county jails.
Neb. Rev. Stat. § 29-2401 (1995) provides that it is the responsibility of the county sheriff to transport an inmate to DCS when the inmate has been sentenced to that department. So, any delay in the transfer of an inmate from a county jail to DCS would be the responsibility of the county, and the state should not be liable for the county's costs of "keeping and maintaining" any such inmate. Your letter does not suggest that DCS has refused to accept inmates from the counties when the inmates have been sentenced to DCS.
It is recognized that there are times when inmates who have been sentenced to DCS may be placed temporarily in a county jail, just as there are times when a county inmate may be placed in DCS facilities for "safekeeping." Neb. Rev. Stat. § 29-1001
(1995) purports to give the person who has custody of an inmate the power to place the inmate in any secure and convenient place of confinement in the state. This statute can be construed to authorize counties to place their inmates in DCS facilities. It can also be construed to authorize DCS to place its inmates in county facilities. In the past, DCS has billed counties for "safekeeping" of county inmates on a contractual basis. If DCS were to place one of its inmates in a county jail pursuant to § 29-1001, and absent any agreement between DCS and the county for reimbursement, the county would be entitled to bill the State of Nebraska for $3.50 per day for boarding such inmates pursuant to § 47-121. If there were no funds appropriated by the legislature for payment to the county under § 47-121, then the county would have the right to submit a miscellaneous claim to the State Claims Board seeking reimbursement under Neb. Rev. Stat. §§ 81-8,294 et seq. (1996).
Sincerely,
 DON STENBERG Attorney General
 Laurie Smith Camp Deputy Attorney General
APPROVED BY:
Don Stenberg
Attorney General